# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

MALIBU BOATS, INC.,
a Delaware Corporation,

    Plaintiff,

v.

JOHN SAMPSON,
an Individual,

    Defendant.
_____/

CASE NUMBER:

## COMPLAINT

Plaintiff Malibu Boats, Inc. ("Malibu Boats" or the "Company") sues Defendant John Sampson ("Sampson") for injunctive relief and damages.

### Introduction

1. Malibu Boats brings this action to enforce restrictive covenants against its former employee Sampson who, during his employment, gained knowledge of highly confidential, proprietary, and trade secret Company information.

2. As part of his employment, Sampson entered into Restricted Stock Unit Award Agreements ("RSU Agreements") with Malibu Boats, which contained confidentiality, non-compete, and non-solicitation provisions.  Upon resigning from his employment with Malibu Boats, Sampson violated the restrictive covenants by accepting, or showing an unequivocal intent to accept, employment with a competitor of Malibu Boats.

3. Malibu Boats seeks to enforce Sampson's contractual commitments not to work for a competitor, solicit Malibu Boats' customers or employees, or use or disclose Malibu Boats'

confidential information or trade secrets.  Malibu Boats sues Sampson for damages and injunctive relief.

## Parties, Jurisdiction, and Venue

4. Malibu Boats is a Delaware corporation with its principal place of business in Loudon, Tennessee.

5. Sampson is an individual residing in St. Lucie County, Florida, and is otherwise *sui juris*.

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds $75,000, exclusive of attorneys' fees and costs, exclusive of interest, costs and fees, and it is between citizens of different states within the meaning of 28 U.S.C. § 1332.

7. Sampson is subject to the personal jurisdiction of this Court as he resides in the State of Florida and otherwise maintains sufficient minimum contacts with the State.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b) as Sampson resides in the Southern District of Florida, and the events giving rise to the causes of action occurred in this judicial district.

## General Allegations

9. Malibu Boats is a leading designer, manufacturer, and marketer of recreational power boats under eight brands: Malibu, Axis, Pursuit, Maverick, Cobia, Pathfinder, Hewes, and Cobalt.  The boats are used for a broad range of activities, including water sports such as water skiing, wakeboarding, and wake surfing, as well as fishing and general recreational boating activities.

10. Malibu Boats' brands are marketed and sold throughout the United States and internationally. Through its boat brands, Malibu Boats has created significant goodwill in the marketplace.

11. In 1996, Sampson became employed by Maverick Boat Group, Inc. ("MBG"). Between October 1996 and November 2015, Mr. Sampson held the positions of Customer Service Manager, Quality Assurance Manager, Lamination Manager, and Engineer. Between November 2015 and November 2017, Mr. Sampson obtained employment outside of MBG. He resumed employment with MBG in November 2017 in the role of Plant Manager, then Director of Manufacturing, and finally Director of Composite Engineering. Sampson worked for MBG for almost 25 years.

12. In 2020, Malibu Boats acquired MBG. Unless otherwise indicated, Malibu Boats and MBG are referred to collectively as "Malibu Boats" or the "Company."

13. In his various roles with Malibu Boats, Sampson had access to and gained knowledge of the Company's highly confidential and proprietary information and trade secrets related to the design, manufacture, marketing, and sale of boats, including the Company's strategic plans.

14. In addition, Mr. Sampson has intimate knowledge of the Company's proprietary methods, processes, and technology for designing and constructing boat hulls and decks. The Company's proprietary boat hull and deck design and construction give its brands an industry-leading competitive advantage.

15. Under a Restricted Stock Unit Award Agreement dated November 3, 2021, Malibu Boats awarded Sampson 505 restricted stock units in Malibu Boat's common stock. The restricted stock units vest in three equal increments between November 6, 2022, and November 6, 2024. A

true and correct copy of this Restricted Stock Unit Award Agreement is attached hereto as Exhibit A.

16. Under a Restricted Stock Unit Award Agreement dated May 6, 2022, Malibu Boats awarded Sampson 100 restricted stock units in Malibu Boat's common stock.  The restricted stock units vest in six equal increments between November 6, 2022, and May 6, 2025.  A true and correct copy of this Restricted Stock Unit Award Agreement is attached hereto as Exhibit B.

17. The RSU Agreements are governed by Delaware law.

18. As consideration for the grants of restricted stock units under the RSU Agreements, Sampson was required, among other things: (a) not to use or disclose Malibu Boat's confidential information; (b) not to work for Malibu Boats competitors for one year following the termination of his employment; and (c) not to solicit the Company's customers or employees for three years following the termination of his employment (collectively, the "Restrictive Covenants").

19. The Restrictive Covenants were necessary to advance Malibu Boats' legitimate business interests, including, among other things, protecting the Company's propriety, confidential, and trade secret information and its customer and employee relationships.

20. Specifically, the RSU Agreements' confidentiality provisions state:

> (c) On the Grant Date and at all times thereafter, [Sampson] shall hold inviolate and keep secret all non-public documents, materials, knowledge or other confidential business or technical information of any nature whatsoever that the Company has maintained as confidential and that has been disclosed to or developed by him or to which he had access as a result of his association with the Company and its affiliates ("Confidential Information"). Such Confidential Information shall include non-public technical and business information, including, but not limited to, inventions, research and development, engineering, products, designs, manufacture, methods, systems, improvements, trade secrets, formulas, processes, marketing, merchandising, selling, licensing, servicing, pricing, investors, personnel information (including skills, compensation, experience and performance), customer lists and preferences, records, financial information, manuals and/or business plans and strategies.  [Sampson] agrees that all

> Confidential Information shall remain the sole and absolute property of the Company, unless such information is or becomes publicly available or disclosed by lawful means. On the Grant Date and at all times thereafter, [Sampson] shall not use, disclose, disseminate, publish, reproduce or otherwise make available such Confidential Information to any person, firm, corporation or other entity, except for the purpose of performing services on behalf of the Company. Upon the termination of [Sampson's] employment with the Company for any reason, [Sampson] shall (i) not use, disclose, disseminate, publish, reproduce or otherwise make available such Confidential Information to any person, firm, corporation or other entity, unless such information is or becomes publicly available or disclosed by lawful means; (ii) return to the Company all property that belongs to or is owned by the Company (including any computer, cell phone, personal digital assistant, keys, security cards, etc.); and (iii) return to the Company all documents, records, compositions, articles, devices, equipment, electronic storage devices and other items that disclose or embody Confidential Information, including all copies or specimens thereof (including electronic copies), whether prepared by him or by others, unless such information is or becomes publicly available or disclosed by lawful means . . .

Exs. A and B ¶¶ 12(c).

21.     The RSU Agreements' non-competition provisions state:

> As partial consideration for the grant of an Award, a Participant (other than an Outside Director) shall agree that for a period of time beginning with the date of an Award Agreement and ending on the later of (i) one (1) year following the date of grant or (ii) one (1) year following termination of employment with the Company or any of its affiliates for any reason (the "Termination Date"), [Sampson] shall not directly or indirectly, for himself or another person, firm, corporation, association or other entity, as an owner, partner, participant of a joint venture, trustee, proprietor, stockholder, member, manager, director, officer, employee, independent contractor, capital investor, lender, consultant, advisor or otherwise, or by lending or allowing his name or reputation to be used in connection with, or otherwise participating in or allowing his skill, knowledge or experience to be used in connection with, or operate, develop or own any interest in (other than the ownership of less than five percent (5%) of the equity securities of a publicly-traded company), or be employed by or consult with, any business or entity that competes with the business of the Company (the "Covered Business"), without prior approval of the Company. For purposes of this Agreement, a Covered Business shall include, but not be limited to, any business or entity that designs, manufactures, or markets any type of boat or watercraft, or components thereof, regardless of physical location of such business activity.

Exs. A and B ¶¶ 13.

22.     Finally, the RSU Agreements' non-solicitation provisions state:

>As partial consideration for the grant of this Award, [Sampson] agrees that for a period of time beginning with the date hereof and ending on the later of (i) three (3) years following the Grant Date or (ii) three years following the Termination Date, [Sampson] shall not, directly or indirectly:
>
>(a)   solicit, induce or encourage any employee of the Company or any of its affiliates or Subsidiaries to terminate their employment with the Company or any of its affiliates or Subsidiaries;
>
>(b)   make any defamatory public statement concerning the financial performance, products, services, the Board or management personnel of the Company or any of its affiliates or Subsidiaries, or [Sampson's] employment . . . ; or
>
>(c)   use or disclose the Company's confidential or proprietary information to induce, attempt to induce or knowingly encourage any Customer of the Company or any of its affiliates or Subsidiaries to divert any business or income from the Company or any of its affiliates or Subsidiaries, or to stop or alter the manner in which they are then doing business with the Company or any of its affiliates or Subsidiaries. The term "Customer" shall mean any individual or business firm that is, or within the prior eighteen (18) months was, a customer or client of the Company or any of its affiliates, whether or not such business was actively solicited by [Sampson] on behalf of the Company or any of its affiliates or Subsidiaries during [Sampson's] employment.

Exs. A and B ¶¶ 14(a)-(c).

23.   Brokerage firm E*TRADE is the administrator of Malibu Boats' employee stock plan. To accept a grant of restricted stock units, Malibu Boat employees must first activate an employee E*TRADE stock plan account through E*TRADE's computer-based system. Once the account is created, the employee accepts the grant by logging on to his/her account and following the prompts.

24.   Before accepting a grant of restricted stock units, the employee must open and have an opportunity to read the applicable grant documents, including the RSU Agreement. The

employee must then indicate that they have read and agree to the terms of the documents by clicking the appropriate box.

25. On June 9 and 10, 2022, respectively, Mr. Sampson accepted the grants of restricted stock units contained in the RSU Agreements. A true and correct screenshot of Sampson's acceptances of the RSU Agreements is attached hereto as Exhibit C.

26. In accepting the grants, Sampson agreed to the terms of the RSU Agreements and the Restrictive Covenants contained therein.

27. On or about October 17, 2022, Sampson advised his direct supervisor, Matthew Saloom, that he was resigning from his employment to work for a competitor of Malibu Boats. Sampson refused to disclose the identity of the competitor with whom he accepted employment.

28. Malibu Boats would suffer irreparable harm if its competitor gained access to the confidential information that Sampson possesses or if Sampson were permitted to obtain employment or solicit Malibu Boats' customers or employees.

29. Malibu Boats has been forced to incur attorney's fees and costs in bringing this action.

30. All conditions precedent to bringing this action have been met, waived, or otherwise satisfied.

### Count I – Breach of Contract

31. Malibu Boats incorporates and realleges the allegations set forth in paragraphs 1 through 30 above as though fully set forth herein.

32. Sampson voluntarily entered into the RSU Agreements for valid consideration.

33. The RSU Agreements contain confidentiality, non-compete, and non-solicitation provisions.

34. Sampson breached the RSU Agreements' non-compete provisions by accepting employment with a competitor of Malibu Boats.

35. The similarities between the product lines and customer bases of Malibu Boats and those of its competitors make inevitable the disclosure and use of Sampson's knowledge of Malibu Boats' confidential information and trade secrets.

36. As a direct and proximate result of Sampson's breaches, Malibu Boats has suffered and will continue to suffer substantial and irreparable harm. Malibu Boats has no adequate remedy at law as the value of its business presently being lost, or to be lost, as well as the harm from the inevitable improper disclosure and use of its confidential information and trade secrets, is impossible to ascertain. Unless restrained, enjoined, and ordered to comply with the terms of the RSU Agreements, Sampson will cause further irreparable injury to Malibu Boats.

37. Malibu Boats is entitled to recover damages from Sampson for his breach of the RSU Agreements, including the attorneys' fees and costs it has sustained and will sustain, and any gains, profits and advantages Sampson obtained as a result of such breaches.

WHEREFORE, Malibu Boats requests that the Court:

a) Find that Sampson breached the RSU Agreements;

b) Issue preliminary and permanent injunctions requiring Sampson to comply with the terms of the RSU Agreements;

c) Order Sampson to refrain from working for any of Malibu Boats' direct competitors in accordance with the RSU Agreements;

d) Order Sampson to refrain from disseminating any of Malibu Boats' confidential information in accordance with the RSU Agreements;

    e)      Order Sampson to destroy all confidential information of Malibu Boats in his possession;

    f)      Order Sampson to refrain from soliciting Malibu Boats' customers and employees in accordance with the RSU Agreements;

    g)      Award Malibu Boats all damages caused by Sampson's breaches;

    h)      Award Malibu Boats its reasonable attorneys' fees and costs;

    i)      Award Malibu Boats prejudgment and post-judgment interest to the fullest extent available; and

    j)      Grant Malibu Boats such other relief as appropriate.

## Count II – Anticipatory Repudiation

38. Malibu Boats incorporates and realleges the allegations set forth in paragraphs 1 through 30 above as though fully set forth herein.

39. Sampson voluntarily entered into the RSU Agreements for valid consideration.

40. The RSU Agreements contain non-compete, confidentiality, and non-solicitation provisions.

41. Sampson anticipatorily repudiated the RSU Agreements' non-compete provisions by exhibiting a clear and unequivocal intent to accept employment with a competitor of Malibu Boats.

42. In addition, by virtue of his clear and unequivocal intention to accept employment with Malibu Boats' competitor, Sampson will inevitably breach the confidentiality provisions of the RSU Agreements.

43. As a direct and proximate result of Sampson's anticipatory repudiation, Malibu Boats has suffered and will continue to suffer substantial and irreparable harm. Malibu Boats has

no adequate remedy at law as the value of its business presently being lost, or to be lost, as well as the harm from the inevitable improper disclosure and use of its confidential information and trade secrets, is impossible to ascertain.  Unless restrained, enjoined, and ordered to comply with the terms of the RSU Agreements, Sampson will cause further irreparable injury to Malibu Boats.

44. Malibu Boats is entitled to recover damages from Sampson for his anticipatory repudiation of the RSU Agreements, including the attorneys' fees and costs it has sustained and will sustain, and any gains, profits and advantages Sampson obtained as a result of such anticipatory repudiation.

WHEREFORE, Malibu Boats requests that the Court:

a) Find that Sampson anticipatorily repudiated the RSU Agreements;

b) Issue preliminary and permanent injunctions requiring Sampson to comply with the terms of the RSU Agreements;

c) Order Sampson to refrain from working for any of Malibu Boats' direct competitors in accordance with the RSU Agreements;

d) Order Sampson to refrain from disseminating any of Malibu Boats' confidential information in accordance with the RSU Agreements;

e) Order Sampson to destroy all confidential information of Malibu Boats in his possession;

f) Order Sampson to refrain from soliciting Malibu Boats' customers and employees in accordance with the RSU Agreements;

g) Award Malibu Boats all damages caused by Sampson's anticipatory repudiation of the RSU Agreements;

h) Award Malibu Boats its reasonable attorneys' fees and costs;

i)  Award Malibu Boats prejudgment and post-judgment interest to the fullest extent available; and

j)  Grant Malibu Boats such other relief as appropriate.

### Count III – Declaratory Judgment

45. Malibu Boats incorporates and realleges the allegations set forth in paragraphs 1 through 30 above as though fully set forth herein.

46. This is an action for declaratory judgment under 28 U.S.C. § 2201.

47. Sampson entered into the RSU Agreements for valid consideration.

48. The RSU Agreements contain non-compete, confidentiality, and non-solicitation provisions, which are necessary to protect Malibu Boats' legitimate business interests.

49. Sampson has exhibited a clear and unequivocal intent to accept employment with a competitor of Malibu Boats in violation of his Restrictive Covenants.

50. Sampson's breach of the Restrictive Covenants will cause Malibu Boats irreparable harm.

51. There is a bona fide, actual, present practical need for a declaration of the parties' rights under the Restrictive Covenants.

52. The parties' interests under the Restrictive Covenants are adverse and properly before the Court.

53. An actual and justiciable controversy exists between the parties that necessitates a declaration by the Court.

WHEREFORE, Malibu Boats requests that the Court declare Malibu Boats' powers, privileges, and rights under the Restrictive Covenants, enforce the provisions against Sampson

through preliminary and permanent injunctions and damages, award attorney's fees and costs, and grant Malibu Boats other relief as appropriate.

## DEMAND FOR JURY TRIAL

Malibu Boats demands a trial by jury on all claims so triable as of right.

Dated: December 1, 2022

                Respectfully submitted,

                CLARKE SILVERGLATE, P.A.

                By: /s/ Spencer H. Silverglate
                Spencer H. Silverglate, Esq.
                Fla. Bar No. 769223
                ssilverglate@cspalaw.com
                mpedraza@cspalaw.com
                Maria J. Londono, Esq.
                Florida Bar No. 1011034
                mlondono@cspalaw.com
                jsantana@cspalaw.com
                799 Brickell Plaza, Suite 900
                Miami, FL  33131
                T: (305) 377-0700
                F: (305) 377-3001
                *Attorneys for Plaintiff Malibu Boats, Inc.*